**FILED**

Jul 29 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ soniad _____ DEPUTY

Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117

Plaintiff In *Pro Per*

# THE UNITED STATES FEDERAL DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Anton Ewing,

      Plaintiff,

  vs.

RKJMM Associates, LLC;

Rashad Jones, an individual,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. **'21 CV 1366 DMS DEB**

1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C §227 (b)]
2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]
3. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 (c)]
4. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]

JURY TRIAL REQUESTED

Plaintiff Anton Ewing ("Plaintiff"), an individual, alleges the following upon

PLAINTIFF'S INITIAL COMPLAINT- 1

21cv

information and belief based upon personal knowledge:

## I.  NATURE OF THE CASE

1.      Defendant Rashad Jones, through his solely owned limited liability company, RKJMM Associates, LLC, hired a telemarketing company, and paid said telemarketing company, to initiate and live transfer telemarketing calls to Plaintiff to Defendant's employees to sell loans.  Rashad Jones called Plaintiff directly on July 28, 2021 from 732-685-5091 and after being informed that he was being recorded, he admitted and confessed that he hired a telemarketing company to make calls on his behalf, that he required them to gather specific, confidential qualifying information, and then to live transfer those calls to "Molly" who is an employee of Defendant Rashad Jones.  The audio recording will be introduced into evidence in this matter.

2.      Rashad Jones, from RKJMM Associates, LLC also called Plaintiff on July 27, 2021 to sell Plaintiff a loan.  The call came from 619-826-6143.

3.      Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of RKJMM Associates, LLC ("RKJMM Associates, LLC"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47. U.S.C. § 227 et seq. ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading

21cv

Plaintiff's privacy.  This case involves more than one call in violation of the TCPA.

## II.  JURISDICTION & VENUE

4.      Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of California, seeks relief from the United States Federal District Court, Southern District of California.  For each TCPA subsection (b and c), Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when all calls are added up, exceeds the threshold required for federal court jurisdiction.  This is not a diversity case.  This is a federal question case.

5.      The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims.

6.      This Court also has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.      This Court has personal jurisdiction over Defendant RKJMM Associates, LLC because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, RKJMM Associates, LLC made illegal telemarketing robocalls to Mr. Ewing, with area code 619, while he was in California.   RKJMM Associates, LLC has also subjected itself to personal jurisdiction in California because they are running and abetting said criminal

operation here in California.

8.      Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and because Defendants do business within the State of California and Plaintiff resides within the County of San Diego.

9.      Defendants have purposefully directed their activities into California and have thus enjoyed the benefits and protections of California law.

10.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

11.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

13.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and  inconvenient.

14.    The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the

21cv

purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

21.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

24.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation

21cv

1    under the TCPA 'need not allege any additional harm beyond the one Congress has

2    identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App.

3    LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S.

4    Ct. 1540, 1549 (2016) (emphasis original)).

5

6                                   **III.  PARTIES**

7    25.    Plaintiff, Anton Ewing. ("Plaintiff"), is an individual and resident in

8    California.

9    26.    Defendant RKJMM Associates, LLC is a robo-dialing telemarketer, and is a

10

11   "person" as defined by 47 U.S.C. § 153 (39).

12   27.    Rashad Jones is a "person" as defined by 47 U.S.C. § 153 (39).

13   28.    The above named Defendants Rashad Jones and RKJMM Associates, LLC,

14   and its subsidiaries and agents, are collectively referred to as "Defendants."

15

16   29.    Plaintiff is informed and believes that at all relevant times, each and every

17   Defendant was acting as an agent and/or employee of each of the other Defendants

18   and was acting within the course and scope of said agency and/or employment with

19

20   the full knowledge and consent of each of the other Defendants.  Plaintiff is

21   informed and believes that each of the acts and/or omissions complained of herein

22   was made known to, and ratified by, each of the other Defendants.  Defendants

23   controlled every aspect of its agent's operations including the scripts to be read on

24

25   each call and the fact that Defendant required its agent to record each

telemarketing call.  RKJMM Associates, LLC is and was, at all times relevant to this action, a knowingly and intentionally authorized and controlled agent of Rashad Jones.

## VI.  FACTUAL ALLEGATIONS

30.    In addition to the July 27 and 28 calls, on or about June167, 2021, Defendant Rashad Jones contacted Plaintiff on Plaintiff's cellular telephone number ending in -9640, in an attempt to solicit Plaintiff to purchase Defendant's loan program through the use of a company, upon information and belief, called MCA Leads.

31.    Defendant RKJMM Associates, LLC used an ATDS system to robodial Plaintiff on Plaintiff's cell phone to sell Plaintiff a loan program.  Rashad Jones stated on the phone to Plaintiff that Rashad Jones purchased, set up and used the auto dialer to blast out thousands of telemarketing calls to get loan business. Rashad Jones admitted on the phone that he did not have permission or consent to call or text Plaintiff prior to sending out any of his telemarketing calls that are the subject of this lawsuit.

32.    Defendants are being sued for violating 47 USC §227(b)(1)(A), 47 USC §227(c)(5), California Civil Code[1] §1770(a)(22)(A).

---

[1] Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and

21cv

33.     Defendant RKJMM Associates, LLC is located at 5900 BALCONES DR STE 100 AUSTIN, TX 78731-4298.

34.     Rashad Jones is an officer of Defendant RKJMM Associates, LLC

35.     Rashad Jones is an owner of Defendant RKJMM Associates, LLC

36.     Anton Ewing owns, answers and controls cell phone number ending in - 9640.   This is not a business phone.   This is a private personal use phone used solely for residential family matters.

37.     RKJMM Associates, LLC does not have a California Secretary of State registration.

38.     RKJMM Associates, LLC is illegally doing business in California.

39.     RKJMM Associates, LLC has failed to register as a telemarketer in California with the California Department of Justice.

40.     Defendants have failed to obtain a telemarketers bond in California as required by the California Department of Justice.

41.     RKJMM Associates, LLC exerts agency type control over their third party lead source for telemarketing leads.

42.     RKJMM Associates, LLC requires its lead source to ask certain questions of

---

either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message.

PLAINTIFF'S INITIAL COMPLAINT- 10

the prospective clients before the lead source can transfer the call to RKJMM Associates, LLC employees.

43.     Upon information and belief, RKJMM Associates, LLC began harassing Plaintiff on or about June 16, 2021 at which time Plaintiff expressly told Defendant Jones to stop calling and to send a written copy of its Do Not Call policy.   Then Defendants called again, at least twice more.  Defendants have not sent a written copy of the do not call policy.

44.     Calling Plaintiff's cell phone in California prior to 8:00 AM is a violation of the FTC and FCC regulations and therefore a violation of 47 USC §227(c)(5).

45.     Plaintiff did not consent to, nor give permission for, the subsequent call made by Defendant RKJMM Associates, LLC to Plaintiff.

46.     Often telemarketers higher controlled third parties to do their initial illegal calling in violation of the TCPA.  The initial lead source always plays coy and will not divulge who they are or who they are working for.  That in and of itself is a violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC §227(c)(5).

47.     Further, consent must be in writing and signed by the person called. Plaintiff did not sign any consent to be called.

48.     The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only

21cv

way this, this act is going to get any teeth in it at all is through a serial litigant."

49.      Judge Kenney was referring to the TCPA when he made this above statement on the record.

50.      In addition to the other calls listed herein, Rashad Jones directly called Plaintiff on his DNC registered cell phone in violation of the TCPA.

51.      The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant RKJMM Associates, LLC

52.      Rashad Jones is the agent of RKJMM Associates, LLC and Rashad Jones controls the acts and actions of RKJMM Associates, LLC as his alter ego.

53.      Defendant Rashad Jones used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its services.

54.      Defendant contacted or attempted to contact Plaintiff from telephone numbers confirmed to be Defendant's number.

55.      Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

56.      The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the

litigation.

57.     During all relevant times, Defendant Rashad Jones did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an automatic telephone dialing system or an artificial or prerecorded voice on its cellular telephone pursuant to 47 U.S.C.§227(b)(1)(A).  At no time did Plaintiff provide, give or grant express written permission to be called nor to be robo-dialed by Defendants or its agents.

58.     Further, Plaintiff's cellular telephone number ending in -9640 was added to the National Do-Not-Call Registry on or about February 16, 2012.

59.     Defendants placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -9640 in or around June 2021.

60.     Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

61.     Plaintiff received numerous solicitation calls from Defendants within a 12-month period.

62.     Defendants continued to call Plaintiff on its telephone number -9640 in an attempt to solicit its services and in violation of the National Do-Not-Call provisions of the TCPA.

63.     Upon information and belief, and based on Plaintiff's experiences of being called by Defendant after being on the National Do-Not-Call list for several years

prior to Defendant's initial call, and at all relevant times, Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. §227(c)(5).

64.    Plaintiff was harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff via his telephone for solicitation purposes, thereby invading the privacy of said Plaintiff whose telephone number was on the National Do-Not-Call Registry. Plaintiff was damaged thereby.

65.    Plaintiff is suing as a person that received numerous solicitation calls from Defendants within a 12-month period, who had not granted Defendants prior express consent and did not have an established business relationship with Defendants.

66.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

67.    The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

68.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

21cv

69.     The term ATDS[2] as used and mentioned herein is as defined by the TCPA and by the 9th Circuit Court of Appeals in the recent *Marks vs. Crunch San Diego, LLC* case.  D.C. No 14-cv-00348 BAS BLM.

## V. STANDING

70.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint

---

[2] "we conclude that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator."

liberally").

71.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

72.     A valid injury in fact;

73.     which is traceable to the conduct of Defendants;

74.     and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

75.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.).  For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least twenty times by both Defendants.  In fact, Plaintiff expressly informed both Defendants to cease and desist from all future telemarketing on the very first call. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was

21cv

on the National Do-Not-Call Registry ( hereinafter, "DNC Registry").  As well,

Plaintiff had no prior business relationship with Defendant prior to receiving the

seriously harassing and annoying calls by RKJMM Associates, LLC.  All of

Plaintiff's injuries are concrete and de facto. For an injury to be "particularized"

means that the injury must "affect the plaintiff in a personal and individual way."

*Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant

case, it was Plaintiff's phone that was called and it was Plaintiff who answered the

calls.  It was Plaintiff's personal privacy and peace that was invaded by both

Defendant's persistent phone calls using an ATDS and a pre-recoded message,

despite Plaintiff having no prior business relationship with either Defendant and

Plaintiff's attempt to avoid the damage by registering his number on the DNC

Registry.

**The "Traceable to the Conduct of Defendant" Prong**

76.     The second prong required to establish standing at the pleadings phase is

that Plaintiff must allege facts to show that their injury is traceable to the conduct

of Defendant.  In the instant case, this prong is met by the fact that the calls to

Plaintiff's cellular phone and home phone (land line) were placed either by

Defendant directly, or by Defendant's agent at the express direction and control of

Defendant.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

77.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by both Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue both Defendants on the stated claims.

78.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*.

However, an injury need not be "tangible" in order to be "concrete," and intangible

injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an

intangible harm constitutes injury in fact, *Spokeo* provided two factors to be

considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1)

whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or

American courts,' and (2) congressional judgment in establishing the statutory

right, including whether the statutory right is substantive or procedural." *Matera v.*

*Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016).

*Spokeo* also held that "the violation of a procedural right granted by statute can be

sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the

one [the legislature] has identified." *Id*.

79.     Here, Plaintiff alleges that Defendant RKJMM Associates, LLC contacted

him using a "telephone dialing system."  This is insufficient standing alone, but as

in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, one

of the calls is available to the Court as audio recordings of the robotic voice

message that initiated the calls. Second, the calls are solicitation advertisements:

they advertise Defendant RKJMM Associates, LLC's services for which Plaintiff

has absolutely not use or interest. Third, Plaintiff declares that he has never heard

of Defendant RKJMM Associates, LLC, visited any location operated by said

Defendant prior to the harassing and annoying calls, nor provided his cellular

telephone number to Defendant RKJMM Associates, LLC or consented to receive

calls from Defendant.  Plaintiff also has had no prior business relationship with

Defendants.  Plaintiff had no reason to be in contact with Defendant RKJMM

Associates, LLC nor has he ever purchased any kind of product or service that they

are selling.  Plaintiff's allegations are sufficient to establish that Defendants used

ATDS in sending their prerecorded solicitation messages illegally and in direct

violation of the TCPA.

80.     In Plaintiff's case, the allegations establish that he did not give prior express

consent.  He declared that he was "the regular user and subscriber to the cellular

telephone number at issue."  He also declared that he has "never heard of

[Defendant], visited any location operated by [Defendant], provided [his] cellular

telephone number to [Defendant] or consented to receive text messages from

[Defendant]."  As in *Charkchyan*, these allegations are sufficient to support

Plaintiff's claims that he did not give prior express consent authorizing Defendant

to send the prerecorded messages, nor to use an ATDS.

81.     On July 29, 2021 at or around 9:22 AM, Defendants called Plaintiff again to

sell a loan from 619-490-1156 to Plaintiff's cell phone (-9640) without consent

through the use of an auto dialer which had a distinct bubble popping sound at the beginning followed by a swoosh sound when the live transfer was made to employee Molly at "New Caliber Financial." As soon as "Molly" got on the phone and heard Plaintiff's name, Plaintiff asked for Rashad Jones. "Molly" hung up immediately.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b).

82. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-81.

83. The foregoing acts and omissions of both Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b), and in particular 47 U.S.C. § 227 (b)(1)(A).

84. As a result of both Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227 (b)(3)(B).

85. Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

**47 U.S.C. §227(b)**

86.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-81.

87.   The foregoing acts and omissions of both Defendants, jointly and severally, constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b), and in particular 47 U.S.C. § 227 (b)(1)(A).

88.   As a result of both Defendant's knowing and/or willful violations of 47 U.S.C. §227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b) )(3)(C).

89.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **THIRD CAUSE OF ACTION**

### **Negligent Violations of the Telephone Consumer Protection Act**

90.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-81.

91.   The foregoing acts and omissions of both Defendants, jointly and severally, constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one  of the above cited provisions of 47 U.S.C. §

21cv

227(c), and in particular 47 U.S.C. § 227 (c)(5).

92.     As a result of both Defendant's negligent violations of 47 U.S.C. § 227(c),

Plaintiff is entitled an award of $500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

93.     Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct

in the future.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227 et seq.

94.     Plaintiff repeats and incorporates by reference into this cause of action the

allegations set forth above at Paragraphs 1-81.

95.     The foregoing acts and omissions of both Defendants constitute numerous

and multiple knowing and/or willful violations of the TCPA, including but not

limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c),

in particular 47 U.S.C. § 227 (c)(5).

96.     As a result of both Defendant's knowing and/or willful violations of 47

U.S.C. § 227(c), Plaintiff is entitled to an award of $1,500.00 in statutory damages,

for each and every violation, pursuant to 47 U.S.C. §227(c)(5).

97.     Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct

in the future.

21cv

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against both Defendants for the following:

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of both Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C.  227(b)(3)(B).
- Any and all other relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of both Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request treble damages, as provided by statute, up to$1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).
- Any and all other relief that the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. §227(c)

- As a result of both Defendant's negligent violations of 47 U.S.C. §227(c)(5), Plaintiff is entitled to and request $500 in statutory damages, for

21cv

each and every violation, pursuant to 47 U.S.C.  227(c)(5).

- Any and all other relief that the Court deems just and proper.

## **FOURTH CAUSE OF ACTION**

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(c)**

- As a result of both Defendant's willful and/or knowing violations of 47 U.S.C. §227(c)(5), Plaintiff is entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(c)(5).

- Any and all other relief that the Court deems just and proper.

Respectfully Submitted this 29th day of June, 2021.

/S/ Anton Ewing
Anton Ewing, Plaintiff

21cv

# EXHIBIT 'A'

DocuSign Envelope ID: 69AC80B0-1AC3-4002-899A-4E8A38A1DEBC



# New Caliber Financial

| New Caliber Admin Form | |
|---|---|
| **Business Legal Name:** | **Doing Business As:** |

| **Legal Entity** | Corp | LLC | Partnership | Ltd Partnership | LLP | Sole Prop | **Federal Tax ID:** | | |
|---|---|---|---|---|---|---|---|---|---|
| **Business Phone:** | | | | | | | **Company Website:** | | |
| **Cell Phone:** | | | | | | | **Business Fax:** | | |
| **Email Address:** | | | | | | | **Business Start Date:** | | **State of Incorporation:** |
| **Physical Address:** | | | | | | | **City:** | **State:** | **Zip:** |
| **Mailing Address** | | | | | | | **City:** | **State:** | **Zip:** |

| Owner #1 Information | | |
|---|---|---|
| **Full Legal Name Owner 1:** | **% of Ownership:** | **Credit Score:** |
| **Home Address:** | **City:** | **State:** **Zip:** |
| **Email Address:** | **Cell Phone:** | |
| **Date of Birth:** | **Social Security #:** | |

| Owner #2 Information | | |
|---|---|---|
| **Full Legal Name Owner 2:** | **% of Ownership:** | **Credit Score:** |
| **Home Address:** | **City:** | **State:** **Zip:** |
| **Email Address:** | **Cell Phone:** | |
| **Date of Birth:** | **Social Security #:** | |

| Business Information | |
|---|---|
| **Business Description:** | |
| Rent   Mortgage/Owned | **Open Bankruptcy?** |
| **Monthly Rent or Mortgage Payment:** | |
| **Landlord Name:** | **Landlord Contact #:** |

| Funding Information | | | | | | |
|---|---|---|---|---|---|---|
| **How Much Capital Is Being Requested?** | **When Do You Want To Be Funded?** | Now | 15 Days | 30 Days | 60 Days | 90 Days |
| **What Is The Capital Being Requested For?** | | | | | | |
| **Visa/MasterCard Monthly Volume:** | **Total Monthly Sales (All Forms of Revenue):** | | | | | |
| **Gross Annual Sales (Previous Year's Tax Return):** | **Current Credit Card Processor:** | | | | | |
| **Do you currently have a Business Loan/Merchant Cash Advance? If Yes, what is the Current** | **Outstanding Balance?** | | | | | |

| Authorization Details |
|---|

By signing below, each of the above listed business and business owner/officer (individually and Collectively, "you") authorize RKJMM Associates LLC, dba New Caliber Financial, and each of its representatives, successors, assigns and designees ("Recipients") that may be involved with or acquire commercial loans having daily repayment features or purchases of future receivables including Merchant Cash Advance transactions, including without limitation the application therefore (Collectively, "Transactions") to obtain consumer or personal, business and investigative reports and other information about you, including credit card processor statements and bank statements and bank statements, from one or more consumer reporting agencies, such as Trans Union, Experian and Equifax, and from other credit bureaus, banks, creditors and other third parties.

**Owner Signature:** _____   **Co-Owner Signature:** _____

**Print Name:** Anthony Stark   **Print Name:** _____

**Date:** _____   **Date:** _____

# EXHIBIT 'B'

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING, et al., | Case No.:  18cv1455-LAB (JLB) |
| Plaintiff, | **FINDINGS AND ADMONITION TO PLAINTIFF** |
| v. | |
| OASIS MEDIA, LLC, et al., | |
| Defendant. | |

After affording Plaintiffs Anton Ewing notice and an opportunity to be heard, the Court found that although he had been repeatedly ordered to obey Civil Local Rule 83.4 (concerning civility and professionalism), he repeatedly violated this rule. Ewing was discourteous and unprofessional when communicating with opposing parties and counsel; he disparaged their intelligence, ethics, and behavior; and he acted in a manner detrimental to the proper functioning of the judicial system.

Although Ewing has usually proceeded *pro se*, he is a frequent litigant, and represents to the Court that he has a J.D. from the University of Arizona College of Law. Despite his having legal training, the Court has repeatedly had to remind or order him to familiarize himself with various rules and to obey them.  He is not in the same category as ordinary civil litigants whose unfamiliarity with applicable rules is more excusable.  *See Doe v. City of Los Angeles*, 2013 WL 6019121, at

1   *15 (C.D. Cal., Nov. 13, 2013); *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317,

2   1323 (W.D. Wash., 2011). Although Civil Local Rule 83.4 refers to the duties of

3   attorneys, Ewing must treat it as applicable to him. He is **ORDERED** to read and

4   obey it. He is also **ORDERED** to read and obey Fed. R. Civ. P. 11.

5      Specifically, Ewing is **ORDERED** to be courteous and civil in all

6   communications with opposing counsel, parties, and third parties and to refrain

7   from disparaging their intelligence, ethics, or behavior. This includes making

8   accusations for improper purposes (such as to harass, delay, or embarrass) or

9   making any accusation without first confirming that it is accurate and supported by

10   evidence. *See* Fed. R. Civ. P. 11(b)(1) and (3). In filings in this Court, he is

11   **ORDERED** not to attach or quote from private correspondence or other private

12   communications (including letters, emails, texts, or phone calls) between himself

13   and other parties or counsel, except as specifically authorized under applicable

14   rules or laws, or permitted by judicial officers of the Court. He is **ORDERED** to

15   refrain from making misrepresentations to opposing counsel or parties.

16      Several documents Ewing provided to the Court showed that he misleadingly

17   used the designation "JD" after his name, followed by a disclaimer mentioning

18   privilege and confidentiality, and citing legal authority.[1] At the hearing, Ewing

19   represented to the Court that he had stopped using this designation and would not

20   resume doing so, and the Court takes him at his word. When communicating with

21   counsel, parties, or third parties in connection with litigation, Ewing is **ORDERED**

22

23

---

24   [1] Ewing offered the explanation that this was appropriate for his work as a tax

25   preparer. But the communications had nothing to do with tax preparation. In
     context, this was likely to mislead recipients, especially non-lawyers, into believing

26   he was a lawyer. In one particularly egregious example, he did this when

27   discussing settlement with a non-lawyer. He inaccurately said the case was over
     and had been resolved in his favor, apparently to convince his opponent to make

28   a quick payment.

18cv1455-LAB (JLB)

1   not use the designation "JD" after his name or otherwise suggest that he is an

2   attorney.

3       For a period of 36 months from the date this order is issued, Ewing must file

4   a copy of this order along with any new pro se pleading he files in this District.

5

6   **IT IS SO ORDERED**.

7   Dated:  May 29, 2019

8

9                          Hon. Larry Alan Burns

10                         Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18cv1455-LAB (JLB)

# EXHIBIT 'C'

**Home  Dream  Partner With Us**
**Why New Caliber Financial**
**How**



**in** 🅾

Request Funds

# CONTACT US

**If you have any questions or comments, please contact us via email or phone, or send us a message using the contact form.**

**Email**
**office@newcaliberfinancial.com**

**Phone**
**(972) 325-1471**

in 🅾

**Name ***

First Name          Last Name

**Email ***

**Phone ***

(###)          ###          ####

**Business Name**

**Amount Requested**

**Use of Funds**

# EXHIBIT 'D'

   Home  My Network  Jobs

**Top-Ranked HBCU Online - Apply 26 or more previous college credits to a**



# Rashad Jones · 3rd

Business Owner at New Caliber
Financial

Allen, Texas, United States · **Contact info**

**194** connections

Message ( **More** )

 **New Caliber Financial**

 **Bryant University**

## About

Experienced Sales Director with a demonstrated history of working in the consumer services industry. Skilled in Analytical Skills, Sales, Sales Operations, Sales Management, and Market Analysis. Strong sales professional with a Bachelor's

## Activity
194 followers

Posts Rashad created, shared, or commented on in the last 90 days are displayed here.

### See all activity

## Experience

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS131474
Cashier ID: naparici
Transaction Date: 07/29/2021
Payer Name: Anton Ewing
------------------------------------
CIVIL FILING FEE- NON-PRISONER
 For: Anton Ewing
 Case/Party: D-CAS-3-21-CV-001366-001
 Amount:         $402.00
------------------------------------
CASH
 Amt Tendered:  $402.00
------------------------------------
Total Due:      $402.00
Total Tendered: $402.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.